**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

ALEXANDER DRUYAN  )
   Plaintiff    )
          )
v.         )  CIVIL ACTION No._____
          )
BRUCE CYBUL    )
   Defendant   )

## PLAINTIFF'S COMPLAINT

### PARTIES

1. The Plaintiff, Alexander Druyan, is a New York resident residing at 395 South End Avenue, Apartment #11J, New York, NY 10280.

2. The Defendant, Bruce Cybul is a New York resident residing at 150 E 69th Street, Apartment 2T, New York, NY 10021.

### JURISDICTION/VENUE

3. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1333(1) because this action arises under the admiralty and maritime jurisdiction of the United States. Specifically, Plaintiff's claims arise from a maritime tort occurring on navigable waters within the Commonwealth of Massachusetts, and the alleged conduct bears a substantial relationship to traditional maritime activity.

4. This Court has personal jurisdiction over Defendant pursuant to the Massachusetts long-arm statute, Massachusetts General Laws chapter 223A, § 3, because Defendant committed a tortious act within the Commonwealth and/or caused injury by acts or omissions occurring within the Commonwealth.

5. Venue is proper in the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in the Commonwealth of Massachusetts.

### FACTUAL ALLEGATIONS

6. The Plaintiff incorporates by reference herein paragraphs 1 – 5.

7. Plaintiff was swimming with his wife at Long Pond in Harwich, MA on August 7, 2024.

8. Long Pond connects to the Atlantic Ocean through the Herring River.

9. At all times he was swimming, Plaintiff was swimming inside a designated swim area marked by buoys.

10. This is corroborated by a redacted police report from the Massachusetts Environmental Police (MEP), where the man identified as the "victim", whose name was redacted but was the Plaintiff, stated that he was "closer to the shore than to the marked swim aread [sic] buoys."

11. At all relevant times he was swimming, Plaintiff was wearing a "Safer Swimmer."

12. A Safer Swimmer is described on its website, saferswimmer.com, as "a brightly colored, inflatable, lightweight float with a waist belt which visibly floats behind swimmers without interfering or hindering performance."

13. Defendant was operating his pontoon boat at Long Pond in Harwich, MA on August 7, 2024.

14. This boat, registration number MS8147BR, was registered in the Commonwealth of Massachusetts.

15. Sometime shortly prior to 3:00p.m., Plaintiff was struck in the head by a boat being driven by Defendant.

16. Defendant, after hearing a thud and realizing he had hit a swimmer, helped Plaintiff on board and brought him to a private dock that allowed him to dock his boat.

17. Plaintiff received aid from bystanders until medical professionals arrived.

18. An officer with the Harwich Police Department (HPD) arrived at approximately 3:06 p.m.and was flagged down by the group aiding the Plaintiff.

19. A Lieutenant with the HPD, as well as the harbormaster and an officer with the MEP eventually arrived as well.

20. An officer with the HPD later described the Plaintiff as having "a large laceration on the back of his head, as well as scratches on the right side of his arm and body."

21. When speaking to the Lieutenant, Defendant stated that he did not see the Plaintiff but "must not have been paying attention."

22. Additionally, the report from the MEP officer quotes Plaintiff as having informed him that the captain of the boat that hit him said to him "Sorry, sorry, sorry, we were not looking" while helping Plaintiff on to the boat.

23. Although the report has the name redacted, based upon the circumstances and corroborating evidence from the HPD report, we believe that individual quoted to be the Defendant.

24. A witness who was riding on the front of the Defendant's boat told police that they saw the Plaintiff swimming and attempted to warn Plaintiff, but it was too late.

25. Had Defendant been paying attention, he also would have seen Plaintiff and would have been able to avoid him.

26. During investigations the next day, Plaintiff pointed out the location of the incident to the MEP officer, who noted that it was "well inside the marked swim areas that are clearly labeled by the Swim Markers."

27. As a direct and proximate result of Defendant's negligence, Plaintiff sustained a laceration to his head, injuries to his right arm and the right side of his body, as well as other physical injuries, economic losses, and lasting emotional harm, the full nature and extent of which will be proven at trial.

## COUNT I
### *General Maritime Negligence v. Bruce Cybul*

28. The Plaintiff realleges and reavers paragraphs 1 – 27 as if expressly stated herein.

29. Defendant owed Plaintiff a duty to exercise reasonable care under the circumstances while operating his vessel.

30. Defendant breached that duty by operating his vessel in an area designated for swimming while, by his own admission, failing to maintain a proper lookout and failing to pay adequate attention to his surroundings.

31. Defendant's conduct constituted negligence under the general maritime law.

32. As a direct and proximate result of Defendant's negligence, Plaintiff sustained severe personal injuries, including a laceration to the head, injuries to his right arm and the right side of his body, endured significant pain and suffering, emotional distress, and other damages, some or all of which may be permanent.

Wherefore, the Plaintiff, Alexander Druyan, demands judgment against the Defendant, Bruce Cybul, for all damages allowable by law together with interest, costs, and attorney's fees.

Respectfully submitted,
Plaintiff, by His Attorney,

Dated: July 24, 2026

*/S/ Joseph M. Orlando, Jr.*
Joseph M. Orlando, Jr., Esq.
BBO # 680995
Orlando & Associates, PC
1 Western Avenue
Gloucester, MA 01930
Ph: 978-283-8100
Fx: 978-283-8507
jmorlandojr@orlandoassociates.com